## STATE v. WERNER W. NELSON.[1]

May 3, 1946.

No. 34,144.

1Reported in 22 N. W. (2d) 681.

*William T. Johnson,* County Attorney, for the State.
*Milton Lindbloom* and *John E. Harrigan,* for respondent.

MAGNEY, JUSTICE.

In a proceeding to determine paternity, there was a verdict for defendant. The state appeals from an order denying its motion for a new trial.

In view of the claimed error, it is necessary to make a detailed review of the evidence. The complaining witness, Muriel A. Anderson, was born April 2, 1927. She met defendant for the first time on March 17, 1944, at a lunchroom or tavern in St. Paul, where she had been visiting an aunt for two days. Her home was at Forest Lake, where she was employed in a restaurant. Defendant worked in St. Paul, but his home was on a farm eight miles west of Stacy. The following evening, March 18, at about 6:30 or 7:00 o'clock, defendant picked her up according to plans made the

previous evening, and they drove north on state highway No. 61. They first stopped at a tavern two miles out of St. Paul, and each drank a bottle of beer. The next stop was at Hugo, where each had a couple of drinks of whiskey. They then stopped at Forest Lake for a few minutes. She visited the place where she worked, and he went into a liquor store and purchased a four-fifths quart of whiskey. From Forest Lake they proceeded to Stacy, about nine miles farther north, arriving at the bus depot at Stacy about 9:30 o'clock that night. The place was equipped with booths, and beer and soft drinks were served. Complainant says that she had two beers and two or three "cokes" and that defendant drank some whiskey from his bottle. From this point on the stories of the two principals vary materially.

Defendant states that they left the bus depot at about 11 o'clock, and Muriel claims that they stayed there until two o'clock in the morning. He testified that as they were leaving the bus depot he asked her if she wanted to go to her home in Forest Lake. She did not say anything. He then said: "I am going to go home." She went with him. Defendant's home, as has been stated, was located about eight miles west of Stacy. When they arrived no one was up. They went upstairs. There were two beds. Both undressed, except as to undergarments, and went to bed, one in each. In a few minutes Muriel came into his bed. He claims that the opportunity did not lead to sexual intercourse; that in a short while she went back to her own bed; and that he did not have sexual intercourse with her that night, either in his car or in his home.

The foregoing is defendant's version of the happenings that night after they left the bus depot in Stacy.

Muriel claims that when they left Stacy defendant drove toward Wyoming and then turned east for two or three miles; that he parked the car on this side road; that she was sober; that she was unsuccessful in resisting an attack by him; and that he had sexual intercourse with her in the front seat of the Ford car. She denies that she slept that night in defendant's home. She was very positive.

"Q. Did he suggest that you come out to his house?

"A. No.

"Q. And spend the night?

"A. No. He didn't.

"Q. As a matter of fact, that is what you did, didn't you?

"A. No, I didn't. I didn't go out to his home or anybody else's.

"Q. You didn't spend the night at Werner's home?

"A. No, I didn't.

"Q. And at no time that evening—

"A. No.

"Q. Were you in Werner's home?

"A. No. I wasn't."

Later on she was asked:

"Q. And you now want to swear under oath that you were not at Werner's house?

"A. I was not at Werner's house—definitely not."

She said she did not know where Werner's father and mother lived. She was then asked:

"Q. You did not have intercourse with Werner at his home?

"A. No.

"Q. You swear to that?

"A. I swear to that."

Later, Muriel again testified that she did not spend the night at the home of defendant's mother near Stacy and that she had never seen Mrs. Nelson until she saw her in the courtroom. When she returned home she did not tell her mother what had occurred.

The foregoing is Muriel's version of what happened.

At about 11 o'clock the following forenoon they returned to the bus depot at Stacy, where they stayed until 2:30 in the afternoon. Muriel testified that she missed her next menstrual period, which was due between March 25 and April 1. The child was born December 9, 1944.

The first and only time Muriel spoke to defendant after March 18 was on July 16. She had seen him at other times and knew where

he worked. She told him then that she was pregnant and blamed him for her condition. The complaint was issued on October 12, 1944. In the meantime and on September 30, 1944, defendant had married.

Complainant testified that she had kept steady company with one Albert Helmuth since September 1943 and that they had become engaged in November. The night she went out with defendant she told him she was engaged. The marriage date had been set for sometime in April. She had been out with Albert in the early part of March, and she said that he had kissed her and "loved her up." She was asked: "He got quite familiar with you?" to which she replied, "No. Not too." At the trial she testified that she and Albert broke up on March 7, but there is also evidence, both at the trial and at the preliminary hearing, that this occurred on March 14, only three days before she met defendant. Thus, within three to ten days prior to March 17 she had broken off a four-month engagement with Albert Helmuth and called off a wedding set for April.

On this evidence and other of less importance, the jury found for defendant. It is obvious that they did not believe complainant's story. Many of its features were such that they were fully justified in failing to have any confidence in it. The state itself in its brief and argument practically admits that complainant's story was unworthy of belief, but insists that on defendant's own testimony a verdict for the state would have been justified. It claims that the state was not bound by the testimony of complainant, and that the court erred in limiting the jury's consideration to the place of conception testified to by complainant and that it took from the jury's consideration defendant's own testimony as to facts, which could leave but one inference, namely, that the act of sexual intercourse took place in defendant's home and not in the car, as testified to by complainant.

 The state claims error in the following part of the court's charge:

"Now, she testified as to but one act of sexual intercourse with the defendant and at one particular place. Under those circumstances, in order to find the defendant guilty * * * you must be satisfied by a fair preponderance of the evidence that an act of sexual intercourse took place on March 19, 1944, at the place which she testified. There is no evidence in this case of any other act of sexual intercourse. The defendant denies that any act ever took place, and Muriel denies that there was any act of sexual intercourse except on the highway on the side road on the morning of the 19th day of March 1944. * * * if you do not believe her story that the act of sexual intercourse took place at the time claimed by her and at the place claimed by her, then it will be your duty to find the defendant not guilty, that is, to find that he is not the father of the child."

In the memorandum attached to its order denying the state's motion for a new trial, the court stated:

"The state's chief ground upon which it claims that a new trial should be granted is that the court erred in instructing the jury that defendant should be found not guilty if it was found that the alleged act of sexual intercourse did not take place on the 19th day of March 1944 in the car of defendant on a side road. The instruction in question was given on the strength of what our supreme court said in State v. Ryan, 78 Minn. 218 [80 N. W. 962]. In the case at bar, the complaining witness testified positively that there was only one act of sexual intercourse and that act took place in defendant's car on a side road. Defendant positively denied having intercourse at any time or place with the complaining witness. The jury believed defendant. Inasmuch as plaintiff claimed only one act and at a particular place, there could be no mistake on her part or she was deliberately lying. The occasion was material. If it did not take place on the occasion as testified to by her, there was no evidence which would have sustained a verdict of guilty."

In the Ryan case, the complaining witness was positive as to the date and the occasion and that it was the first and only time she

had ever had sexual connection with accused. A similar situation exists here. The court in the Ryan case charged that the particular time and place of the intercourse were immaterial so long as it occurred within the time mentioned by the physicians as the usual period of gestation; that it is not the law to confine the public prosecutor to the exact date set forth in the complaint; and that, if the evidence satisfied the jury that the intercourse took place within "that period of about a week," the defendant could be found guilty. This court said (78 Minn. 220, 221, 80 N. W. 963):

"If her statement as to the occurrence was disbelieved and rejected by the jury, there was an entire absence of evidence to support the verdict. Sexual intercourse at any other time or place or circumstances than at the father's house on the evening of August 25 was positively denied by the complainant." The court said that under the circumstances the jury "may have placed an unwarranted construction upon the charge to defendant's prejudice, and have concluded that, although not satisfied of the truthfulness of the complaining witness when telling when and where and under what circumstances the child was begotten, they could convict because from the testimony it appeared that there were other opportunities for sexual intercourse."

In State v. Wallen, 123 Minn. 128, 130, 143 N. W. 119, 120, a case involving incest, reference was made to the Ryan case, and the court there said:

"* * * The precise date was not material [in the Wallen case], and the complainant may have been mistaken in that respect. State v. Ryan, 78 Minn. 218, 80 N. W. 962, is not in point. In that case it appeared from the testimony of the prosecutrix that but one act of intercourse ever took place between the parties, and she definitely and specifically indicated the place and occasion."

The state insists that it was not bound by the testimony of complainant. Inferentially, it concedes that she falsified when she testified that the act of sexual intercourse took place in the auto-

mobile while it was parked on the side road. It contends that on the testimony of defendant himself, which disclosed an opportunity, the jury should have been permitted to draw the inference that the act of sexual intercourse took place in defendant's home. Complainant testified positively as to the time and place and as positively denied that she had ever been in defendant's house. Defendant denied having had intercourse with complainant at any time or place. Thus, the only parties involved and the only ones who know the facts positively swear that no sexual intercourse took place in the Nelson home. Even if, on defendant's testimony, there was an opportunity, the jury cannot be permitted under the facts in this case to draw an inference where both complaining witness and defendant positively swear that no act of sexual intercourse took place in the Nelson home. There is no evidence in the case that any such act took place there. The state's claim that the Nelson home was the place of conception is thus unsupported by evidence, and the court was right in its charge.

In our opinion, the verdict is supported by the evidence, and no error was committed by the court in its charge.

Order affirmed.