STATE OF DELAWARE, upon the complaint of Helen W. Johnson, *v.* LESTER WRIGHT.

*(December* 16, 1938.)

RODNEY, J., sitting.

*Daniel J. Layton, Jr.,* for the State.

*Robert G. Houston* for the defendant.

Court of General Sessions, No. 12, October Term, 1938.

RODNEY, J., delivering the opinion of the Court:

The question primarily raised by this action is whether an appeal will lie on behalf of the State from a judgment of a Justice of the Peace by which the defendant was discharged when arraigned on a charge of bastardy.

It seems to be assumed by counsel that the underlying and controlling question is as to the nature and form of

the proceedings, viz: Whether the proceedings be criminal or civil in nature, although in the view that I take of the matter, as hereinafter set out, this question may not be entirely controlling.

It seems to be tacitly agreed that if the proceedings be criminal in nature no appeal would lie by the State where such right of appeal is not expressly given. Indeed it has been repeatedly held that even where the statutory right of appeal is expressly given to the State such statute is unconstitutional as violative of the double jeopardy clause where the initial proceedings had progressed to the point that the jeopardy had attached. See note to 113 *A. L. R.* 636.

The industry of counsel has produced many cases holding that bastardy proceedings are civil, not criminal, in nature. These cases are largely collected in 7 *Am. Jur.* 681; 10 *C. J. S., Bastards,* § 32, *p.* 143; 11 *Ann. Cas.* 316, and other digests. The multitude of cases in itself is somewhat misleading as much must depend upon the varying language of the individual statutes and no general rule can be laid down for all. Most of the cases holding the proceedings civil in nature are based upon the theory that the Court in determining the nature of the action looks not so much to the form of procedure, but to the end to be attained. These Courts consider that the purposes of the statute are not so much to punish the man for begetting a bastard as to impose upon him the obligation to care for the infant and to protect the public from the cost of maintenance. There is much merit in these conclusions, and the difficulty lies in attempting to formalize or standardize certain purely statutory proceedings which refuse to be classified in any known and fixed groups. The better reasoned cases recognize that the proceeding, which they call a civil proceeding, has no basis in contract, and in *Town of Naugatuck v. Smith,* 53 *Conn.* 523, 3 *A.* 550, the Court held that the pro-

ceeding resembled a civil suit for a tort in which the body could be arrested and held to respond to a judgment. Thus the Court explained the commencement of the proceedings by arrest. Other cases as *Morris v. State,* 115 *Ind.* 282, 16 *N. E.* 632, 17 *N. E.* 598, expressly hold a bastardy proceeding to be a proceeding of *capias ad respondendum.* Under the Delaware law of March 3, 1875, *Ch.* 180, *Vol.* 15, *Laws of Delaware, Revised Code of* 1935, *Section* 4584, no writ of *capias ad respondendum* can issue in a civil case without a preceding affidavit of such a nature that could not be filed in such a case as bastardy.

The Delaware Courts have uniformly held bastardy proceedings as quasi criminal. In 1860, in the Court of General Sessions, Chief Justice Gilpin, in *Smith v. State, Houst. Cr. Cas.* 107, said:

"This is a quasi criminal proceeding and solely cognizable in this, a Court of criminal jurisdiction, in which the State is the party complainant, and not a civil suit between the individuals concerned in it."

See, also, *Vail v. State,* 1 *Penn.* 8, 39 *A.* 451.

Just what does the Court mean by a quasi criminal proceeding? The word "quasi" is used to mark a resemblance but which supposes some difference. It negatives the idea of identity but points out that the conceptions are sufficiently similar for one to be classed as the equal of the other. 2 *Bouv. Law Dict., Rawles Third Revision, p.* 2780.

Having in mind the theory of those jurisdictions which hold bastardy proceedings to be purely civil in nature, viz, the lack of intention to make the penalty a fine or imprisonment, but the main objective being to compel the guilty person to apply his means to the support of the child and to relieve the community from the natural duty of the father, and being also mindful of the definition of a quasi criminal proceeding, let us, from an inspection of our own

bastardy act, see if our Courts have not, quite correctly, designated such proceedings as quasi criminal.

The *Delaware Act* (*Article 4, Ch.* 88, *Revised Code of 1935*) provides that proceedings shall be commenced by a complaint under oath, whereupon a warrant of arrest shall be issued. These are strange terms to be used for the institution of civil process, especially where arrest in civil proceedings is illegal.

The complaint need not be made by the mother of the child, but may be "by any other person". This would be an unusual provision if the mother could be considered as the person entitled to the civil remedy.

The statute, *Rev. Code* 1935, § 3559, prescribes: "The proceedings shall be in the name of the State, and the warrant of arrest in form as in other criminal cases."

Surely the language "as in other criminal cases" shows no indication of a legislative will that this shall be a civil proceeding.

The statute speaks of the venue of "an offense" under the Act, and the duty of the State to extradite a person charged with an offense, who has gone to another State. These are unusual terms to be used in connection with civil remedies.

The process can be issued and the arrest made before the child is born, and defendant held by recognizance to appear after birth. No known form of civil action is predicated upon such proceedings.

The statute makes it the duty of the Attorney-General to appear for the State, *Rev. Code* 1935, § 3567, and provides that if the mother die her dying declaration shall be admitted into evidence, *Rev. Code* 1935, § 3571. Dying declarations are generally held to be admissible only in criminal matters of a serious nature, such as homicide, although some statutes extend it to abortion and similar of-

fenses, but dying declarations have been held in but one jurisdiction to be admissible in civil proceedings. Any benefit accruing from the statute is not a benefit primarily accruing to the mother. The statutory duty of the Attorney-General to appear for the State would seem to give a large measure of control of the litigation to that official, and no order, other than for some expenses, is made payable to the mother except insofar as she may be the person having the child in her care.

■ The primary object of the statute as I view it, is that the maintenance of the child should be borne by him who was responsible for its existence, and the State furnishes the machinery in its own name to compel such maintenance.

■ The proceeding is not based on contract and does not sound in tort. It is a police regulation of a statutory character, for the enforcement of which the State extends its criminal process. Largely because a conviction is not followed by a fine in *presenti* or by imprisonment but by an order requiring the defendant to pay an amount from Fifteen to Forty Dollars a month until the child is sixteen, the Courts have hesitated to call it a strictly criminal proceeding and have termed it "quasi criminal", viz., that it is not identical with criminal proceedings but is sufficiently similar thereto to be classed with them, and this terminology I think is correct.

I shall now, but briefly, consider the matter of the right of the State to an appeal even if, for the purpose of the argument merely, it be assumed that the proceeding was of a civil nature. The whole proceeding is of statutory origin—it had no existence at the common law, and the first statute in Delaware relating to the subject matter was passed in 1796. Being created by statute it is entirely regulated by that statute and if no right of appeal is there given such right is non-existent. The statute shows the only right

of appeal in favor of "any person, against whom an order of filiation shall be made." *Rev. Code* 1935, § 3566. That of course is not the State. This appeal provided by the statute is to the Court of General Sessions, a court of criminal jurisdiction, and presupposes the entry of an order by the Justice, for the Court on appeal has solely the power to "affirm, reverse or amend the orders" that have been made by the Justice.

But, it is argued, if the proceedings be of a civil nature, the appeal will lie not only within the statute expressly dealing with bastardy proceedings, but under the provisions of the general statute giving jurisdiction to Justices of the Peace in civil actions of debt. *Chapter* 121, *Revised Code of* 1935, and especially *Sec.* 4521. It is sufficient for me to say that I do not think the cited section has any application. The Justice of the Peace could have no jurisdiction of the stated cause of action (bastardy) under *Chapter* 121, and if he had no jurisdiction under that chapter the appeal there found could not be operative. The jurisdiction of an Appellate Court over a judgment of a Justice of the Peace is entirely derivative, and if the Justice had no jurisdiction the Appellate Court of course acquires none.

The statutory appeal from the decision of a Justice in a civil action for debt is made to the Superior Court, a court of civil jurisdiction, and an entirely different court from that in which this present appeal is lodged.

The motion to dismiss the appeal must be granted and the appeal dismissed.