## STATE v. SIMON G. SAX.
### BERTHA SELIN, COMPLAINING WITNESS.[1]

April 21, 1950.

No. 34,891.

[1]Reported in 42 N. W. (2d) 680.

2

*William E. Tracy,* for appellant.

*Fryberger, Fulton & Boyle* and *Morris H. Greenberg,* for defendant-respondent.

*Thomas J. Naylor, W. F. Dacey,* and *John B. Arnold, Jr.,* for the State.

LORING, CHIEF JUSTICE.

This action, under M. S. A. c. 257, was to determine defendant's paternity of an illegitimate female child born to complainant, Bertha Selin. A jury rendered a verdict of guilty. Miss Selin comes here on appeal from the support order of the court which followed the verdict.[2]

February 16, 1944, complainant, Bertha Selin, gave birth to an illegitimate child in the city of Ironwood, Michigan. She later brought the matter to the attention of the county attorney of St. Louis county, Minnesota, where defendant resided, but the county attorney was of the opinion that he should not take any action. Therefore, she filed a complaint in her own behalf in the municipal court of Duluth, Minnesota, under M. S. A. c. 257 (§ 257.19), charging defendant with being the father of her child. At this point, the county attorney entered the proceedings and prosecuted the trial in the district court. A verdict of guilty was returned by the jury, and judgment was entered on March 31, 1948, pursuant to the verdict.

Subsequently, the court ordered defendant to pay complainant $317 for lying-in expenses; $1,000 for the support and maintenance of her child from the date of birth to the date of the judgment; and $35 a month thereafter; but, in lieu of the $1,000 and the monthly payments of $35, the court ordered that he pay, in addition to the $317, the sum of $4,500 to be paid to the director of social welfare in full settlement of all obligations for care, maintenance, and education of the child. Defendant petitioned the court for an order confirming the $317 item, approving the $4,500 lump-sum payment, and discharging him from further liability. The director of social welfare consented to the lump-sum payment. A hearing was held August 2, 1948, to consider defendant's petition, at which time complainant, without objection by the county attorney, appeared and estimated the cost of support for her daughter and asked the court for permission to cross-examine defendant with reference to his financial situation or that she be furnished with reliable in-

[2]She appeals in various capacities, one of which is as mother.

4

formation in reference thereto. This was refused, and the court entered an order approving defendant's petition.

■ The right of the mother to appeal is challenged by the dissent. We take the view that she has a definite personal financial interest in the amount of the award for support, and therefore that she is an aggrieved party entitled to appeal, under M. S. A. 605.09. She has a right in the proceeding to recover her lying-in expenses and the expense of support of the child prior to the judgment. Her secondary responsibility for support gives her a direct interest in the amount of the award against the father, whose responsibility is primary. Should the award be insufficient for the child's support, the burden of her secondary responsibility would be correspondingly increased, and, as natural guardian of her child, she is the person most interested in protecting its rights and interests.

In most states, as in this, illegitimacy proceedings are civil in nature and are governed by the rules of procedure applicable to civil actions. 10 C. J. S., Bastards, § 32; State v. Jeffrey, 188 Minn. 476, 247 N. W. 692. In a few jurisdictions they are considered to be criminal in nature.[3] This is usually because the statute creating the particular proceeding provides for the punishment of the putative father. In some states, the proceeding is neither civil nor criminal, but partakes somewhat of the nature of both. 10 C. J. S., Bastards, § 32. Usually, the mother institutes the proceeding by a complaint (see M. S. A. 257.19), but statutes often provide that if she refuses or neglects to prosecute public authorities liable for the support of the child can prosecute. 10 C. J. S., Bastards, § 52. See, M. S. A. 257.18. In Rhode Island and New Jersey, the proceeding can *only* be instituted by a public agency.[4]

[3] 1 Ann. Code Maryland, art. 12; 9 Ann. Laws Massachusetts, c. 273, § 11 (misdemeanor); 18 Purdon's Pennsylvania Stat. Ann., c. 2, art. V, § 4506 (misdemeanor); 1 Code of Laws South Carolina 1942, c. 81; cf. Georgia Code 1933, c. 74-3, but cf. c. 74-2, §§ 74-202, 74-203; cf. Rev. Code Delaware 1935, c. 88, art. 4; see, Andrew G. v. Catherine A. 16 Fla. 830, 834; Vail v. State, 17 Del. 8, 39 A. 451.

[4] New Jersey Stat. Ann., title 9, c. 17 (defendant and municipality only authorized to appeal, art. 4, § 9:17-20); Gen. Laws Rhode Island 1938, c. 424.

In the majority of jurisdictions, the mother is a party by express provision[5] or by implication from the context of the statute.[6] An exhaustive examination of the cases from the states which have statutes similar to the majority discloses no holding at present in force that the mother is not a party. On the contrary, the cases hold either expressly or by implication that the proceeding is for the mother's benefit and that she is a party.[7] Moreover, eight states,

See, People ex rel. Board of Police v. Shulman, 8 App. Div. 514, 40 N. Y. S. 779, for the law of New York prior to Domestic Relations Law, § 136, 14 McKinney's Consol. Laws New York Ann. c. 14, art. 8.

[5] 2 Arizona Code Ann. 1939, c. 27, art. 4, § 27-402; Civil Code California 1949, div. 1, part III, title II, c. 1, § 196a; 1 Illinois Rev. Stat. 1949, c. 17, §§ 6, 7, 18; 18 Michigan Stat. Ann., c. 250, § 25.451; 1 Mississippi Code Ann. 1942, title 4, c. 1, §§ 383, 384; 1 Rev. Stat. Nebraska 1943, c. 13, §§ 13-111, 13-113; 2 New Mexico Stat. Ann. 1941, c. 25, art. 4, §§ 25-408, 25-414; 14 McKinney's Consol. Laws New York Ann., c. 14, Domestic Relations Law, art. 8, § 136; 66 *Id.*, part 3, New York City Criminal Courts Act, art. V, § 76; 3 North Dakota Rev. Code 1943, title 32, c. 32-36, §§ 32-3608, 32-3618; 9 Page's Ohio Gen. Code Ann., div. VIII, c. 2, §§ 12110, 12114, 12123, 12134; 7 Williams Tennessee Code Ann. 1934, title 5, c. 6, § 11954; Vermont Stat. Rev. 1947, title 14, c. 158, §§ 3265, 3270, 3280; West Virginia Code Ann. 1949, c. 48, art. 7, §§ 4772, 4776; 1 Wisconsin Stat. 1947, c. 166, §§ 166.01, 166.07, 166.08, 166.19; 4 Wyoming Comp. Stat. Ann. 1945, c. 58, art. 4, §§ 58-407, 58-418.

[6] 3 Arkansas Stat. Ann. 1947, title 34, c. 7; 2 Colorado Stat. Ann. 1935, c. 20, §§ 1, 3; 3 G. S. Connecticut Rev. 1949, title 63, c. 400, §§ 8178, 8182; 2 Burns Indiana Stat. Ann. 1933 (1946 Replacement) part 2, c. 6, §§ 3-631, 3-650; 2 Code of Iowa 1946, c. 675, §§ 675.2, 675.8, 675.19, 675.21; G. S. Kansas Ann. 1935, c. 62, art. 23, § 62-2303; Kentucky Rev. Stat. 1948, c. 406, § 406.120; 2 Maine Rev. Stat. 1944, c. 153, § 28; 8 Montana Rev. Codes Ann. 1947, c. 99, § 94-9905; 1 New Hampshire Rev. Laws 1942, c. 128, §§ 1, 5, 6; 2 G. S. North Carolina 1943, c. 49, art. 1; 2 Nevada Comp. Laws 1929, §§ 3406, 3407, 3411, 3422; Oklahoma Stat. 1941, title 10, c. 3; 2 South Dakota Code 1939, title 37, c. 37.21, §§ 37.2102, 37.2103, 37.2107.

[7] Mathews v. Hornbeck, 80 Cal. App. 704, 252 P. 667; McCoy v. People, 71 Ill. 111, and cases cited; Crabtree v. Commonwealth, 213 Ky. 415, 281 S. W. 162; Harley v. Ionia Circuit Judge, 140 Mich. 642, 104 N. W. 21; State v. Fleming, 204 N. C. 40, 167 S. E. 483; Devinney v. State (Ohio) Wright, 564; Oneal v. State, 34 Tenn. (2 Sneed) 215; Hatcher v. State ex rel. McGill, 24 Tenn. App. 213, 142 S. W. (2d) 326; Smith v. State, 146 Wis.

having statutes[8] providing for prosecution by the state's attorney fall within this group.

In this state the proceeding is civil in nature—"the state merely loans its name to be used as plaintiff." State v. Jeffrey, 188 Minn. 477, 247 N. W. 693; State v. Hansen, 187 Minn. 235, 244 N. W. 809; State v. Thompson, 193 Minn. 364, 258 N. W. 527; State v. Wenz, 41 Minn. 196, 42 N. W. 933. In general, our provisions (c. 257) are *similar to those states forming the majority group,* but our statute is more liberal toward the child and more comprehensive as to the responsibilities of the adjudged father than that of any other state. With the exception of the immunity afforded by an award under § 257.28, the statute completely supersedes the primitive common-

---

111, 130 N. W. 894, 33 L. R. A. (N. S.) 463; see, Wimberly v. State, 90 Ark. 514, 516, 119 S. W. 668, 669; Davis v. Herrington, 53 Ark. 5, 7, 13 S. W. 215; Yeager v. People, 116 Colo. 379, 181 P. (2d) 442; People ex rel. Cullison v. Dile, 347 Ill. 23, 27, 179 N. E. 93, 95; People ex rel. Lesner v. Vacianos, 304 Ill. App. 580, 26 N. E. (2d) 623; Barkey v. Stowell, 117 Ind. App. 162, 70 N. E. (2d) 430; State v. Pratt, 40 Iowa 631; McAndrew v. Madison County, 67 Iowa 54, 24 N. W. 590; Costigan v. Stewart, 76 Kan. 353, 355-358, 91 P. 83, 84-85, 11 L. R. A. (N. S.) 630; Everett v. Allen, 125 Me. 55, 56, 130 A. 858, 859; State ex rel. Glasgow v. Hedrick, 88 Mont. 551, 294 P. 375; Cottrell v. State, 9 Neb. 125, 1 N. W. 1008; Richardson v. Egerton, 186 N. C. 291, 119 S. E. 487; Baker v. West, 190 N. C. 335, 129 S. E. 804; Myers v. Stafford, 114 N. C. 234, 19 S. E. 764; Ingwaldson v. Skrivseth, 7 N. D. 388, 393-394, 75 N. W. 772, 774; State v. Ward, 19 Ohio Dec. 744, 747, 8 N. P. (N. S.) 561, 566; Scott v. Wix, 71 Ohio App. 519, 50 N. E. (2d) 361; State ex rel. Walker v. Clark, 144 Ohio St. 305, 58 N. E. (2d) 773; Libby v. State, 42 Okl. 603, 606, 142 P. 406, 407; Ex parte Lowery, 107 Okl. 132, 134, 231 P. 86, 87; State ex rel. Burghart v. Haslebacher, 125 Or. 389, 393, 266 P. 900, 902; State v. Morrow, 158 Or. 412, 430, 75 P. (2d) 737, 744, 76 P. (2d) 971; State ex rel. Kiihl v. Chambers, 37 S. D. 555, 159 N. W. 113; Thomas v. Miser, 49 S. D. 329, 207 N. W. 58; Stovall v. State, 68 Tenn. (9 Baxt.) 597.

[8] Arkansas Stat. Ann. 1947, title 34, c. 7, § 34-710; 2 Burns Indiana Stat. Ann. 1933 (1946 Replacement) part 2, c. 6, § 3-650; 2 Code of Iowa 1946, c. 675, § 675.19; G. S. Kansas Ann. 1935, c. 62, art. 23, § 62-2320; Kentucky Rev. Stat. 1948, c. 406, § 406.120; 8 Montana Rev. Codes Ann. 1947, c. 99, § 94-9905; Oklahoma Stat. 1941, title 10, c. 3, § 75; West Virginia Code Ann. 1949, c. 48, art. 7, § 4776.

law rules with reference to illegitimate children and their fathers. Even that immunity seems to be somewhat qualified by the last sentence of § 257.23. The terms of the statutes evince a purpose to place the illegitimate father in as responsible a position toward the child as if the child were legitimate. There are other provisions which, as in most of the jurisdictions, indicate an intention that the proceedings are for the benefit of the mother as well as the child and the public, and which give her sufficient interest to be a party.

Section 257.23 provides in part:

"* * * If he is found guilty, or admits the truth of the accusation, he shall be adjudged to be the father of such child and *thenceforth shall be subject to all the obligations for the care, maintenance and education of such child, and to all the penalties for failure to perform the same, which are or shall be imposed by law upon the father of a legitimate child of like age and capacity.*" (Italics supplied.)

As we said in State v. Jeffrey, 188 Minn. 479, 247 N. W. 693:

"* * * The statute imposes a natural and moral duty—a threefold duty:

"(1) The father's duty to the mother, to whom he owes more than gratitude, since by his conduct he has in a measure contributed to her social ostracism and the impairment of her earning power;

"(2) The father's duty to his own child; and

"(3) The father's duty to protect the public against the child's becoming a public charge."

Early in the jurisprudence of this state, it was held that proceedings under the illegitimacy statutes were "also for the protection and benefit of the mother." State v. Zeitler, 35 Minn. 238, 240, 28 N. W. 501, 502; State ex rel. Schumacher v. Hausewedell, 94 Minn. 177, 102 N. W. 204; State v. Nestaval, 72 Minn. 415, 75 N. W. 725; see, State v. Dougher, 47 Minn. 436, 50 N. W. 475; State v. Jeffrey, *supra;* Ladd v. Martineau, 205 Minn. 129, 285 N. W. 281; see, M. S. A. 257.33. In State v. Zeitler, 35 Minn. 238, 239, 28 N. W.

8

501, 502, we quoted with approval the following passage from the case of Hoffman v. State, 17 Wis. 615, 616:

"* * * The maintenance of a child includes its entire maintenance from its birth onward. It was the design of the statute to compel the father to bear this burden, not only for the protection of the public, *but also for the protection and benefit of the mother,* whom he had brought into a condition which to a certain extent drives her from society and renders it difficult for her to support either herself or her child." (Italics supplied.)

Our view that the mother is a party is also supported by the legislative history of c. 257. G. S. 1866, c. 17, § 2, provided that the state of Minnesota should be plaintiff in the action which the justice enters in his docket. This provision has existed in substantially the same form up to the present time. (M. S. A. 257.20.) G. S. 1866, c. 17, § 12, provided that when the mother commenced an illegitimacy proceeding and *failed to prosecute the same* the commissioners of the proper county or any person interested in the support of the child might prosecute the action to final judgment. G. S. 1878, c. 17, § 12; G. S. 1894, c. 17, § 2050; R. L. 1905, c. 17, § 1576; G. S. 1913, c. 17, § 3223. This section was not reënacted in L. 1917, c. 210. Nothing was said as to the prosecution of the action by the state until L. 1909, c. 275, § 1, which amended R. L. 1905, § 1569, wherein it was stated: "It shall be the duty of the county attorney to prosecute all proceedings under this act in any court of this state." This provision remained in G. S. 1913, c. 17, § 3216, until deleted by L. 1917, c. 210, § 1, amending G. S. 1913, c. 17. Again, the statutes were silent as to the prosecution by the state of illegitimacy proceedings.[9] Finally, by L. 1941, c. 150, § 1, amending Mason St. 1927, § 3261 (now M. S. A. 257.19), the county attorney was again given the duty of conducting the action.

---

[9]There are cases on record where the proceedings have been prosecuted by private counsel retained by the mother. See, State v. Wiebke, 154 Minn. 61, 191 N. W. 249, where she appeared by her own counsel and the attorney general appeared only as a friend of the court. See, Opinion Attorney General, No. 121-B-11, May 6, 1927.

If the mother was once a party, as is clearly indicated by State v. Zeitler, 35 Minn. 238, 28 N. W. 501; State ex rel. Schumacher v. Hausewedell, 94 Minn. 177, 102 N. W. 204; and State v. Nestaval, 72 Minn. 415, 75 N. W. 725, when and by what provision was this right taken from her? It cannot be claimed that the omission of G. S. 1913, c. 17, § 3223,[10] by L. 1917, c. 210, thereby eliminated her direct general financial interests which also directly affected the child's interests, when the express purpose of the changes enacted by L. 1917, c. 210, was to give greater protection to illegitimate children than had formerly been the case. See, Report of Minnesota Child Welfare Commission, 1917. As stated by the commission, p. 9:

"* * * The fundamental idea is the proposition that the state is the ultimate guardian of all children who need what they cannot provide for themselves and what natural or legal guardians are not providing."

The whole of the legislative history indicates a purpose to strengthen illegitimacy proceedings. Thus, the amendatory provision of L. 1941, c. 150, § 1, which places the duty of prosecution upon the county attorney, like the lending of the state's name to the mother under which to conduct the proceedings, was not intended to deprive the mother of any of her interests in the proceedings, but to furnish her his assistance in conducting the trial. The part of the section theretofore in force, vesting the mother with the right to initiate the proceeding against the father (§ 257.19), was left in exactly the same form as it had been previously. Before the 1941 amendment, the mother could initiate the action and prosecute it to final judgment. See, State v. Wiebke, 154 Minn. 61, 191 N. W. 249. Such an interpretation of the legislative intent is not only the more reasonable and justifiable, but is in harmony with c. 257 on illegitimate children and its legislative history, which indicates that the legislature intended to give as much aid and pro-

---

[10]Section 3223 authorized the mother to recover by action any sum of money which ought to have been paid by the father pursuant to a judgment or order.

tection to the mother as possible. See, for example, L. 1917, c. 210, § 1; L. 1921, c. 489, § 1; L. 1943, c. 201, § 1; State v. Zeitler, 35 Minn. 238, 28 N. W. 501; State v. Jeffrey, 188 Minn. 476, 247 N. W. 692; Ladd v. Martineau, 205 Minn. 129, 285 N. W. 281. That the county attorney should be required to conduct the prosecution comports with the legislative intent to assist the mother as well as to protect the county's interest so that the child may not become a public charge.

The dissent contends that the elimination by L. 1917, c. 210, of the mother's right to settle the liability of the father and the addition of § 3225(a) in L. 1917, c. 210, authorizing the state board of control or a duly appointed guardian to effect a settlement, subject to the court's approval, indicates that the mother is not a party. But, see, State v. Jeffrey, 188 Minn. 476, 247 N. W. 692; Ladd v. Martineau, 205 Minn. 129, 285 N. W. 281. When viewed separately from the other provisions of M. S. A. c. 257, this section (§ 3225[a]) lends some support to the dissent. But, when the statute on illegitimacy is read as a whole, it appears that many other sections give the mother rights which can only be adequately protected by giving her a standing in court, including the right to appeal.

The mother's personal financial interest in the proceeding is evidenced by the provisions of § 257.23, which require the court to fix the amount and order defendant to pay the mother for the expenses of her confinement, as was done in this case. See, L. 1921, c. 489, § 1; L. 1943, c. 201, § 1; State v. Zeitler, 35 Minn. 238, 28 N. W. 501. Section 257.23 also requires the court to fix the amount the mother is entitled to have defendant pay *her* for the "care and maintenance of the child prior to judgment" (Opinion Attorney General, No. 840-C-4, May 6, 1927), and not to the director of social welfare, as was erroneously done in the *lump-sum* settlement in the case at bar.[11] Who but the mother can complain of this error? If the position of the dissent is valid, the state would not

[11]This error to the mother's prejudice is entirely overlooked by the dissent.

complain, because, according to the dissent, its duty and only interest is to see that society does not have to support the child.

Section 257.24 lends added support to the conclusions that the mother has the right to appeal under § 605.09. By § 257.19, it is within the discretion of the county attorney to refuse to prosecute the action. If he does so and the position of the dissent is valid, it follows that the mother is without remedy. The county attorney may, in effect, decide the case against her, but she cannot prosecute the action and appeal from an adverse decision, because she has no aggrieved interest. Yet, under § 257.24, judgment of paternity is a condition precedent to the mother's right to bring the civil action there authorized. It is also inferable from the dissenting opinion that the county attorney's duty is only to protect the interests of the public in seeing that the child does not become a public charge. Thus, when the child is still born or dies after birth, the county attorney would have no interest of the state to protect by prosecuting the action.[12] Were the position of the dissent correct, the mother would not be able to recover burial expenses or medical bills in connection with her sickness and the child's without a judgment of paternity—which she could not obtain. This construction, in effect, renders an important part of § 257.24 a nullity.

In Haugen v. Swanson, 222 Minn. 203, 23 N. W. (2d) 535, we held that it is the primary duty of a father of a legitimate child to support his minor children and that the mother's duty is sec-

---

[12]See, Opinion Attorney General, No. 840-C-2, May 12, 1931, supporting this theory, and Opinion Attorney General, No. 121-B-11, May 6, 1927, wherein it is stated:

"In this situation, it is my opinion that it is not your absolute duty as county attorney to continue to conduct the original paternity proceedings, since it appears that the state and county now have no interest therein, either financial or otherwise, within the provisions and declared purposes of the statutes. Under the circumstances you might well be justified in notifying the mother of the child that if she desires to have the proceedings continued it will be necessary for her to retain and substitute her own counsel."

ondary to his. If the support order against the adjudged father is inadequate, the mother will have to take over the obligation to support. See, State v. Nestaval, 72 Minn. 415, 416, 75 N. W. 725. Consequently, she has a direct financial interest in the amount with which the father is charged. State v. Nestaval, *supra.*

Since the child cannot appeal in its own right, the mother, as natural guardian and custodian, is, by common sense and human experience, the person most interested in protecting the child's right as well as her own. To refuse to allow her to appeal jeopardizes the primary purpose of the statute. If the position of the dissent is correct, it leaves open to the county attorney and the director of social welfare the right to compromise, without recourse to this court and without reference to the interests of the mother, the very interests of the child which the statute is aimed at safeguarding. Where the mother's financial position is such that the child is not likely to become a public charge, the county attorney may refuse to prosecute (see, Opinion Attorney General, No. 121-B-11, October 30, 1945), or he and the director of social welfare may believe that a small award or no award at all will suffice to protect the public. Yet such a result is directly contrary to the announced legislative intent to make the adjudged father as responsible for his child as the father of a legitimate one. We cannot acquiesce in such a view. It not only does violence to the policy of c. 257, but it fails to recognize that the mother is the best protector of the child's interests.

Thus, we conclude that the legislature, having lent the state's name and the assistance of the county attorney to the mother, did not intend to eliminate her right to protect her interests and those of her child by providing for a compromise of the father's liability between the director of social welfare and the father. Viewed in the light of the provisions giving the mother the right to initiate the proceeding, the right to the expenses of her confinement, the right to support moneys expended prior to judgment, the right, conditioned on the judgment of paternity, to maintain a civil action for confinement, burial, and medical expenses, and

the right to have the father fulfill his primary duty of support, we are of the opinion that the interpretation of the legislative intent advocated by the dissent is not well taken.[13] Cf. State v. Nestaval, 72 Minn. 415, 75 N. W. 725. It totally disregards the other provisions in the statute, and it does not further the legislative intent to protect the interests of the child.

The dissent places considerable reliance on Lawson v. McLeod, 189 Minn. 93, 248 N. W. 658. In that case, the court, speaking through Mr. Justice Hilton, holds that the mother cannot bring a civil action to recover from the adjudged father money expended by her in the care and support of the illegitimate child, *where the father cannot be held in contempt of court* because of his inability to comply with the court's order to pay the welfare board certain sums for the care, support, and education of his child. Defendant had already been adjudged the father of plaintiff's child in a separate proceeding and was in default because of lack of employment.[14] The Lawson case is not authority for the proposition that

[13]See, Opinion Attorney General, No. 605-B-36, May 3, 1921, and Report Attorney General, 1924, No. 12, which recognize that the proceeding is also for the benefit of the mother. In Opinion Attorney General, No. 121-B-11, September 3, 1935, the county attorney was directed, under a proceeding for a lump-sum settlement, that he "should protect the mother's interests."

[14]The Lawson case is not a holding that the mother cannot sue the adjudged father where he is in wilful default of the court's order. To construe the Lawson case in such a manner renders the last sentence of § 257.23 meaningless. It provides:

"* * * If the defendant fails to comply with any order of the court, hereinbefore provided for, he may be summarily dealt with as for contempt of court, and shall likewise be subject to all the penalties for failure to care for and support such child, which are or shall be imposed by law upon the father of a legitimate child of like age and capacity, and in case of such failure to abide any order of the court, the defendant shall be fully liable for the support of such child without reference to such order."

The attorney general has taken the position that where the adjudged father may be summarily dealt with, as for contempt of court, the mother may recover money expended by her in the care and support of the child. See, brief *amicus curiae* by attorney general in the Lawson case. The rule of Beigler v. Chamberlin, 138 Minn. 377, 165 N. W. 128, L. R. A. 1918B, 215, would then be applicable.

the mother is not a party to the illegitimacy proceeding or to the proceedings to adjudicate a support order. It merely reaffirms the provisions of § 257.23 that the support money provided for by the court's order is to be paid to the state and not directly to the mother. Further comment in the opinion is dicta.

The dissent makes the broad statement that, although there are few cases in point when the question of the mother's right to appeal has been considered, the cases hold that, in the absence of a statute granting the mother the right to appeal, she has no such right. We do not so interpret the cases cited by the dissent in support of this view. In New Jersey, the proceeding can *only* be instituted by a public agency (New Jersey Stat. Ann., title 9, c. 17), and *only* the defendant and the municipality are authorized to appeal. Art. 4, § 9:17-20. Hence, Thatcher v. Hackett, 16 N. J. Misc. 459, 1 A. (2d) 438, and Nutt v. Arbitelli, 3 N. J. Misc. 1194, 131 A. 64, cited in the dissent, are not helpful, since the mother in this state may institute the proceeding, and there is no statute similar to that of New Jersey which limits the right of appeal to defendant and the municipality. Likewise, cases which treat illegitimacy proceedings like criminal cases and hold that the state cannot appeal (State ex rel. Borland v. Yates, 104 Or. 667, 209 P. 231; State v. Wright, 39 Del. 552, 3 A. [2d] 74) are not helpful in Minnesota, because the state can appeal here. Cf. State v. Riegel, 194 Minn. 308, 260 N. W. 293; see, State v. Nelson, 221 Minn. 569, 22 N. W. (2d) 681; Opinion Attorney General, No. 6 A, December 10, 1927. (That the Yates case is not authority in Oregon for the proposition that the mother is not a party, see State ex rel. Burghart v. Haslebacher, 125 Or. 389, 393, 266 P. 900, 902; State v. Morrow, 158 Or. 412, 430, 75 P. [2d] 737, 744, 76 P. [2d] 971.)

The case of Waterloo v. People ex rel. Schreiber, 170 Ill. 488, 48 N. E. 1054, holds that the release by the justice of the peace of a defendant charged with illegitimacy is no bar to another examination before another justice of the peace on the same charge. This rule is accepted law in this state. State ex rel. Ortloff v. Lin-

ton, 42 Minn. 32, 43 N. W. 571, but it is not a holding that the mother is not a party. Indeed, the supreme court of Illinois has held that "a prosecution under the bastardy act being a civil suit, and for the benefit of the mother of the child, * * * she is the real party in interest." McCoy v. People, 71 Ill. 111; see, People ex rel. Lesner v. Vacianos, 304 Ill. App. 580, 26 N. E. (2d) 623.

The case of People ex rel. Board of Police v. Shulman, 8 App. Div. 514, 40 N. Y. S. 779, is no longer the law of New York, in view of § 136 of the Domestic Relations Law (14 McKinney's Consol. Laws New York Ann., c. 14, art. 8, § 136), which expressly provides that the mother may appeal. Nor is it helpful here, since the prior statute in New York was not similar to our own.

State v. Schwartz, 67 Ohio App. 69, 35 N. E. (2d) 860, cited in the dissent, was a prosecution under 10 Page's Ohio General Code, § 13008, by the state against the father for failure to support his illegitimate child. The statute provides for imprisonment "in a jail or workhouse at hard labor not less than six months nor more than one year, or in the penitentiary not less than one year nor more than three years." Cf. M. S. A. 617.55, and see, State v. Jeffrey, 188 Minn. 476, 247 N. W. 692. That case was not a proceeding under the illegitimacy statutes of Ohio. (See, 9 Page's Ohio Gen. Code Ann., c. 2, § 12110, *et seq.,* wherein the mother is spoken of as a party. See, § 12114; see, also, Devinney v. State [Ohio] Wright, 564; State v. Ward, 19 Ohio Dec. 744-747, 8 N. P. [N. S.] 561; Scott v. Wix, 71 Ohio App. 519, 50 N. E. [2d] 361; State ex rel. Walker v. Clark, 144 Ohio St. 305, 58 N. E. [2d] 773, to the same effect.)

We agree with the dissent that whether the mother is a party or not must be determined from an interpretation of our own statutes. Our views are based thereon, and our reasons are set out at length *supra.* Our position is in accord with the great weight of authority. As pointed out in the preceding portion of this opinion, illegitimacy statutes fall into three general categories, namely, criminal, quasi-criminal, and civil. By far the greater number are civil in nature, among which, in more than

half, the mother's right to be considered a party is at least inferable. As to the remainder, the statutes expressly provide that the mother is a party. Our statute is civil in nature and is the most comprehensive with regard to the liabilities of the father. Hence, the decisions from jurisdictions in which the mother's right to be a party is inferable from the context are very persuasive in the case at bar. See footnote 7, *supra*. We find no case in point from these jurisdictions, and the dissent has cited none. We are convinced that our legislature, in accord with the pattern set by the great majority of the other states, intended that the mother should still be a party to the proceedings and should have the right to appeal when aggrieved. A contrary result would not only violate the legislative intent and obvious purpose but would be out of line with the great majority of jurisdictions.

■ Complainant's principal contention is that she had a right to cross-examine defendant with regard to his financial situation. That the court should consider the financial status of the father is not questioned by defendant, but he contends that the trial court was informed of his financial status during informal conferences, a record of which was not kept. Thus, complainant is met with the claim that, because all the evidence on which the trial court's order was based is not before this court, her appeal should be dismissed, or, if that be denied, then that the order be affirmed.

A question of due process is raised by denying the mother the right to cross-examine the adjudged father as to his financial situation. The amount of the award is, for the trial court to determine without a jury. M. S. A. 257.23; 3 R. C. L. 767, Doughdrill v. Hothorn, 160 Miss. 290, 133 So. 131, 74 A. L. R. 763. In making its order, the court should carefully inquire into the financial standing and ability of the father. State v. Reese, 43 Utah 447, 467, 135 P. 270, 278; State v. Hammond, 46 Utah 249, 255, 148 P. 420, 423; James v. Commonwealth, 190 Ky. 458, 461, 227 S. W. 562, 563; Annotation, 74 A. L. R. 763. However, since no record of the informal conferences or hearings was kept, this court is not in a position to review the challenge to that court's order. In the

case at bar, complainant's request to examine defendant relative to his financial position was denied. If evidence had been produced and a record made thereof showing his financial status, this court would be in a position to determine whether or not the order was supported by the evidence. See, State ex rel. Sime v. Pennebaker, 215 Minn. 75, 9 N. W. (2d) 257. The statute is silent as to the procedure for making a support order, except that it requires notice to the interested parties. Under present law, the court, not the jury, determines the terms of the support order.[15] The right to a full hearing upon the issues before the court not only should be implied from the language of the statute and the earlier provisions, but it is in accord with the dictates of procedural due process. See, Consolidated Edison Co. v. N. L. R. B. 305 U. S. 197, 226, 59 S. Ct. 206, 215, 83 L. ed. 126, 138.

The trial court in the instant case granted a hearing but refused to permit complainant to examine defendant on his financial status, on the ground that the court had already obtained such information, although it was not in the record. In the New England Divisions Case, 261 U. S. 184, 200, 43 S. Ct. 270, 277, 67 L. ed. 605, 614, Mr. Justice Brandeis, speaking for the court, said:

"* * * A full hearing is one in which ample opportunity is afforded to all parties to make, by evidence and argument, a showing fairly adequate to establish the propriety or impropriety, from the standpoint of justice and law, of the step asked to be taken."

Due process requires that every person shall have the protection of his day in court and an opportunity to be heard in order to establish any fact which will protect his rights. Hamrick v.

---

[15]Prior to L. 1921, c. 489, if the jury found defendant guilty, it determined the amount of "all expenses incurred by the county for the lying-in and support of and attendance upon the mother during her sickness, and for the care and support of such child prior to said judgment * * *." L. 1917, c. 210, § 3218. By the amendment of 1921, the function of determining the amounts to be paid by defendant was taken from the jury and transferred to the court. Despite this change, the same rules of law as to the sufficiency of the evidence to sustain the court's award apply. See, State v. Wiebke, 154 Minn. 61, 191 N. W. 249.

Bryan (D. C.) 21 F. Supp. 392; see, City of Buffalo v. Hawks, 226 App. Div. 480, 483, 236 N. Y. S. 89, 93. In the case at bar, complainant should have had an opportunity to put defendant's financial situation and earning ability in evidence and to have a record made thereof so that there might be a review of the order by this court. Bennett v. State, 147 Okl. 14, 294 P. 149; cf. State ex rel. Sime v. Pennebaker, 215 Minn. 75, 9 N. W. (2d) 257. In Life & Casualty Ins. Co. v. Womack, 228 Ala. 70, 71, 151 So. 880, 881, the court stated:

"* * * Due process of law is provided when the party is given full opportunity to present the questions of law and fact in the trial court, with the right to reserve questions for review, and have them reviewed by the appellate courts. All this is provided for by law in an orderly administration of justice."

The exclusion of competent and relevant evidence on the ground that the trial court was in possession of the evidence, although it was not in the record, is not due process (see, Chicago Junction Case, 264 U. S. 258, 265, 44 S. Ct. 317, 320-321, 68 L. ed. 667, 674), and an order based thereon cannot be sustained. Kessler v. Williston, 117 Ind. App. 690, 75 N. E. (2d) 676; Church v. Western Finance Corp. (Tex. Civ. App.) 22 S. W. (2d) 1074. Cf. Riedrich v. Riedrich, 62 Pa. Sup. 189.

■ The assumption that complainant waived her rights to cross-examine defendant by consenting to an informal conference between herself and the trial judge is not tenable. The only information which the trial judge could have obtained from her related to her own financial status and the requirements of her child.

■ The record fails to show that complainant consented to informal conferences between the trial judge and defendant, a procedure of which we disapprove as a basis for an award. The statute does not contemplate anything but a judicial hearing conducted in a judicial manner, open to both or all of the parties interested. This, of course, does not preclude a stipulation as to the terms of the award by all parties interested.

■ We come to complainant's objection to a lump-sum payment. The claim is made that the lump sum does not provide for contingencies and therefore does not protect the interests of the child. Even so, the fact remains that the legislature, in adopting § 257.28, has authorized a lump-sum settlement and provided the father with a method of relieving himself of future liability, both civil and criminal.

■ Defendant contends that in fixing the amount of the award the court should consider the financial status of the mother. Under § 257.23, the adjudged father is subject to all the obligations for the care, maintenance, and education of the child as the father of a legitimate.child. The law is settled that the father of a legitimate child owes a primary duty to support his minor child and that the mother's obligation is secondary to his. Haugen v. Swanson, 222 Minn. 203, 23 N. W. (2d) 535; cf. Beigler v. Chamberlin, 138 Minn. 377, 165 N. W. 128, L. R. A. 1918B, 215. Therefore, the mother's ability to support her child is irrelevant to the question of what the father should pay. To the extent that the trial court takes the mother's means into consideration in modifying the amount of the father's liability in making the support order, it is relieving the father of his primary duty, contrary to our view of the law.

■ The court was in error in basing its award on support only up to the age of 16. The duty of support continues until the child is no longer a minor. M. S. A. 518.17. See, Sivertsen v. Sivertsen, 198 Minn. 207, 212, 213, 269 N. W. 413, 416. See, also, State v. Johnson, 216 Minn. 427, 429, 430, 13 N. W. (2d) 26, 27, 155 A. L. R. 23.

Defendant contends that a father is not responsible for a minor's support beyond 16 years of age because M. S. A. 617.55 makes it a felony for a parent to intentionally abandon and avoid legal responsibility for the care and support of a child under 16 years of age and unable to support himself by lawful employment. Cf. § 617.56. We disagree with that contention. Merely because defendant cannot be punished in a criminal prosecution for failure

to support his child after its sixteenth birthday does not relieve him from liability in a civil proceeding for support. § 257.23, and see, also, § 257.33. Hence, we hold that the trial court, in formulating its order, should consider the father's responsibility throughout the minority of the child and not limit the award to his liability to the age of 16.

The order of support is vacated and the case remanded with directions for a hearing and order in accordance with the views herein expressed.

Reversed.

KNUTSON, JUSTICE (dissenting).

I dissent. I do not believe that the mother of an illegitimate child has any right to appeal in her individual capacity from an order of the district court approving the payment of a lump sum in settlement of the liability of the father under M. S. A. 257.28. Consequently, I think that the appeal should be dismissed for the reason that if the mother has no right to appeal under our statutes we have no jurisdiction to consider the appeal.

Appellate jurisdiction cannot be conferred upon us by consent. Even though the right to appeal is not properly raised here, we cannot overlook it. Bulau v. Bulau, 208 Minn. 529, 294 N. W. 845. See, also, Jones v. City of Minneapolis, 20 Minn. 444 (491), and Anderson v. Krueger, 170 Minn. 225, 212 N. W. 198, holding that a stipulation of the parties that the case be referred here cannot confer jurisdiction withheld by the statute. In Elliott v. Retail Hardware Mut. F. Ins. Co. 181 Minn. 573, 233 N. W. 316, 317, we said:

"* * * Counsel for defendant has been so accommodating as not to question our jurisdiction, but that does not help plaintiff. The jurisdiction of this court on appeal does not rest upon the consent of counsel or litigants. If it does not exist otherwise, no amount of accommodation on their part can create it. The appeal must be dismissed."

See, also, Simon v. Larson, 207 Minn. 605, 292 N. W. 270.

The right to appeal being purely statutory, we must look to our statutes for the mother's right to be here, if she has any such right. Nothing in our statutes pertaining to illegitimate children defines who may appeal, and it is now clear that in this state appeals in illegitimacy cases are regulated by the statutory procedure of civil cases. State v. Klitzke, 46 Minn. 343, 49 N. W. 54; State v. Jeffrey, 188 Minn. 476, 247 N. W. 692.

Section 605.09 provides that an appeal may be taken to the supreme court by the "aggrieved party."

We have no quarrel with the holding of the majority opinion that the mother may have an interest in the outcome of a proceeding of this kind, but the question is: Has she such an interest that she may appeal individually? It is significant that the mother here does not pretend to appeal as an aggrieved party; neither does she appeal on account of any personal interest she may have. Her notice of appeal reads:

"* * * that Bertha Selin, *the complaining witness* in the above entitled action and said Bertha Selin as mother of Sally Selin, the child whose paternity has been adjudged in said action, and said Bertha Selin as mother and natural guardian of said Sally Selin, a minor child, appeals * * *." (Italics supplied.)

Ordinarily, only parties of record are entitled to appeal from an order or judgment. State ex rel. Nordin v. Probate Court, 200 Minn. 167, 273 N. W. 636. Interest in the outcome alone is not enough. Singer v. Allied Factors, Inc. 216 Minn. 443, 13 N. W. (2d) 378, holding that a stockholder of a corporation has no such interest in a judgment against the corporation as to entitle the stockholder to appeal.

In order to determine whether the mother in an illegitimacy proceeding has such interest in the outcome of the proceeding that she may be said to be an aggrieved party, we must examine our statutes to ascertain what rights a mother has in this type of action.

At common law, the putative father was not chargeable with any duty to support an illegitimate child. State v. Lindskog, 175 Minn. 533, 221 N. W. 911, 912; State v. Johnson, 216 Minn. 427,

13 N. W. (2d) 26, 155 A. L. R. 23. The mother had no right to recover of the putative father. Consequently, if she has any right now, that right must be found in our statute. "Aside from the bastardy statute, there is no liability and no remedy." State v. Lindskog, 175 Minn. 535, 221 N. W. 912, *supra*. It was not a crime to beget an illegitimate child at common law, nor has it been made criminal by statute. Ladd v. Martineau, 205 Minn. 129, 285 N. W. 281. Statutes in derogation of the common law should be strictly construed.

It is true that under our statute a proceeding to charge the father with support of his illegitimate offspring may be commenced by the mother filing a complaint. Section 257.19. The complaint may also be filed by the county board or any member thereof, or by the division of social welfare, or any person duly appointed to perform in the county any of the duties of the division of social welfare relating to the welfare of the child. Section 257.18. In such case, the mother, under the statute, may be required to attend as a *witness*.

The duty to prosecute is expressly placed upon the county attorney. Section 257.19.

Proceedings are instituted to provide "for the indemnity of society against the expense of the support of the child." Reilly v. Shapiro, 196 Minn. 376, 381, 265 N. W. 284, 287.

In State v. Nestaval, 72 Minn. 415, 416, 75 N. W. 725, we said:

"* * * the statute makes the putative father one in law for a particular purpose, viz. for the indemnity of society against the expense of the support of the child, and upon complaint of the mother or certain designated public officers an inquiry may be had as to the identity of the putative father, and upon sufficient proof he may be adjudged to pay a certain amount in support of his illegitimate child, or be imprisoned in default thereof."

With respect to the nature of the proceeding, we said in the above case (72 Minn. 419, 75 N. W. 726):

"* * * *But neither the common law nor statute law permits the mother of a bastard child to sue the putative father as plain-*

*tiff in her own name in the first instance, for its support, even if she so desires. The humane legislative enactment steps in, and does for the mother and bastard child what the rigor of the common law would not permit."* (Italics supplied.)

From time to time our legislature has seen fit to amend our statutes relating to illegitimate children, and the rights of a mother under such statutes have likewise been changed. By our decisions, we have defined the rights of a mother under statutes as they existed at the time. Thus, in State ex rel. Schumacher v. Hausewedell, 94 Minn. 177, 179, 102 N. W. 204, 205, we held that a reasonable allowance may be made for the support of the child, *to be paid to the mother* under G. S. 1894, § 2044, which was the operative statute at that time, and, furthermore, that the father's liability may be released for such sum of money or other property as "she [the mother] may agree to receive, and the county commissioners approve." Authority for holding that the mother may compromise the liability is found in G. S. 1894, § 2041, and the county commissioners were given authority to compromise under § 2053. A settlement by the mother alone was not a discharge. State v. Dougher, 47 Minn. 436, 50 N. W. 475. Under G. S. 1913, § 3223, the mother is given the right to sue and recover *any sum of money* which ought to be paid pursuant to the order and judgment of the court.

In August 1916, at the request of many civic, commercial, and welfare agencies, the governor of this state appointed a commission of eminent men and women to "revise and codify the laws of the state relating to children." This was designated the Child Welfare Commission. After a thorough study of the whole subject, the commission, among other things, made many far-reaching recommendations concerning desired changes in our laws relating to illegitimate children. See, Report of Minnesota Child Welfare Commission, 1917. As a result of this study and the recommendations of the commission, the legislature adopted a number of amendments to existing laws, both with respect to the rights of

the mother and the obligations of the father. L. 1917, c. 210. The purpose of the act is stated to be (L. 1917, c. 210, § 3225[d]):

"This chapter shall be liberally construed with a view to affecting [sic] its purpose, which is primarily to safeguard the interests of illegitimate children and secure for them the nearest possible approximation to the care, support and education that they would be entitled to receive if born of lawful marriage, which purpose is hereby acknowledged and declared to be the duty of the state; and also to secure from the fathers of such children repayment of public moneys necessarily expended in connection with their birth."

The right of the mother to settle the liability of the father was entirely eliminated. Authority to effect a settlement was vested in the state board of control or the duly appointed guardian of the person of the illegitimate child, subject to the approval of the court having jurisdiction of the paternity proceedings. L. 1917, c. 210, § 3225(a). The statute remained as then enacted until it was again amended by L. 1941, c. 152, § 2, when the right to make such settlement was vested in the director of social welfare, subject to the approval of the court. The right of a guardian of the person of the child to make such settlement was there eliminated. The statute has since remained as so amended. M. S. A. 257.28.

Prior to the 1917 amendment, the county board could settle the father's liability. G. S. 1913, § 3226. The 1917 amendment limited the right of the county board to settle the liability of the father to those expenses incurred by the county for which judgment may be or shall have been entered by the court's order. L. 1917, c. 210, § 3224. That provision has remained the same since its enactment. M. S. A. 257.27. Since the 1917 amendment, the mother has no right to effect a settlement with the father under any circumstances.

In Lawson v. McLeod, 189 Minn. 93, 97, 248 N. W. 658, 659, we said:

"As further indicative of the legislative purpose, it is to be noted that in the 1917 amendment, 1 Mason Minn. St. 1927, § 3272(a),

the state board of control or the duly appointed guardian of the illegitimate child is authorized to make, with the approval of the court, a settlement with the acknowledged father. The mother is given no such right."

The right of a mother to sue the father was likewise greatly curtailed by the 1917 amendment. Prior to that time, the mother or the county board could sue to recover *any sum of money* which ought to have been paid pursuant to the court's order. G. S. 1913, § 3223. The 1917 amendment limited the right of the mother to recovery of expenses of confinement and suitable maintenance for not more than eight weeks prior to and eight weeks after confinement. L. 1917, c. 210, § 3219. This was further limited by L. 1921, c. 489, § 3219, to such expenses of confinement and maintenance as were not included in the order of the court, and our statute has so remained since that amendment. M. S. A. 257.24. Since the 1917 amendment, the mother may not sue the father except for the limited purpose authorized by statute. Lawson v. McLeod, *supra.*

Payment for support of the child must now be made to the county welfare board or the director of social welfare. M. S. A. 257.23. *"Payment to the mother is neither required nor permitted."* (Italics supplied.) Lawson v. McLeod, 189 Minn. 97, 248 N. W. 659.

It is significant to note also that the rights of the mother to sue in her individual capacity for the limited purposes provided by the statute are preserved in the section authorizing a settlement by the director of social welfare. M. S. A. 257.28 contains this provision:

"* * * Such settlement shall discharge the father of all further liability, civil and criminal, on account of such child, provided that such settlement shall not affect any liability of the father under section 257.24."[16]

---

[16]Section 257.24 authorizes the mother to sue in a civil action to recover expenses of confinement and suitable maintenance for eight weeks prior to and eight weeks after confinement, if such expenses are not included in the court's order.

The only conclusion I can come to from this expression of legislative intent is that the only right the mother has to control any phase of the proceeding in her individual capacity is limited to the right to sue the father for such expenses as are covered by § 257.24. To now hold that she may appear individually and appeal from the decision of the district court approving a settlement by the director of social welfare, which settlement she can neither make nor prevent, not only nullifies Lawson v. McLeod, *supra,* without overruling it, but reads something into our statutes which the legislature has obviously intentionally eliminated by the amendments referred to. Intention to change a statute may as clearly appear by the omission of something which was contained in a former statute as by adding new language. In re Estate of Cravens, 177 Minn. 437, 225 N. W. 398; State ex rel. Bergin v. Washburn, 224 Minn. 269, 28 N. W. (2d) 652. Here, the legislature has not only omitted rights which the mother formerly had, but has expressly provided what rights she shall now have.

Cases from other states are of little help to us. In the first place, the rights of the mother are derived entirely from statute. The statutes in the different states vary considerably. The concept of a proceeding of this kind likewise varies. In some states they are considered to be criminal in nature, in others quasi criminal, and in still others civil. Without reference to the statutes of the state involved, it is difficult to apply decisions of foreign courts in the construction of our own statutes. Furthermore, it is almost entirely a matter of determining what the intention of our legislature was in enacting the statutes which we now have. Very few cases are to be found in which the precise question now before us has been considered. When it has been considered, it seems that the cases hold, in the absence of a statute granting the mother the right to appeal, that she has no such right.

The general rule is stated in 10 C. J. S., Bastards, § 129, as follows:

"Ordinarily, only a party or person aggrieved who has been accorded such right by statute is entitled to obtain appellate review

of bastardy proceedings. Usually, however, defendant is permitted to obtain review of a judgment or order against him, while a judgment in his favor is reviewable at the instance of the state, the mother, or some public officer or agency, according to which one has been authorized by statute to institute and prosecute the proceedings."

The only two cases cited under the statement in the above text which hold that an appeal may be taken by the mother are Crabtree v. Commonwealth, 213 Ky. 415, 281 S. W. 162, and State v. Fleming, 204 N. C. 40, 167 S. E. 483.

The procedure in North Carolina under the statute is different from that which we have in our state. The trial in the first instance is before the justice of the peace or magistrate, as he is often referred to in the decisions. Under the North Carolina statute, an appeal may be taken from the decision of the magistrate to the superior court. The North Carolina statute (Code of 1927, § 267) provides for the accusation, trial, judgment, and appeal, and contains this provision:

"* * * From this judgment and finding the affiant, the woman or the defendant may appeal to the next term of the superior court of the county, where the trial is to be had de novo."

The Fleming case simply holds that under this statute the woman or the defendant may appeal to the superior court. Of course, that right is expressly provided by the statute.

The Kentucky case (Crabtree v. Commonwealth, *supra*) was also decided under a statute in which it appears that the mother may institute and prosecute the action for her own benefit in her own name. Although the statute does not so expressly provide, that inference seems to follow from the cases. Kentucky Rev. St. 1948 § 406.120, provides that if the action is prosecuted by the county attorney the court shall allow him a fee, to be taxed as part of the costs. The duty to prosecute is not placed exclusively upon the county attorney as it is in our statute.

On the other hand, the North Carolina statute makes no provision for an appeal by the state. Consequently, it was held in Myers v. Stafford, 114 N. C. 234, 241, 19 S. E. 764, that the state may not appeal from a judgment of not guilty. The question of whether the state may appeal depends upon the construction placed upon these proceedings in the various states. Where it is held that the proceeding is criminal in nature, it usually follows as a matter of course that the state may not appeal unless the right is expressly provided by the statute.

The other cases all seem to hold that the mother may not appeal. The New Jersey statute provides that an appeal may be taken by the reputed father or by any municipality aggrieved. In Thatcher v. Hackett, 16 N. J. Misc. 459, 461, 1 A. (2d) 438, 439, the court held that a mother may not appeal individually, saying: '

"The court is without jurisdiction to entertain the individual appeal of the mother. It has been clearly pointed out by our Court of Errors and Appeals in an opinion by Judge (now Vice-Chancellor) Kays that the only proper parties to a bastardy proceeding are the municipality and the putative father. Kaufman v. Smathers, 111 N. J. L. 52; 166 Atl. Rep. 453. On behalf of the mother it is contended that under section 3 of Rev. Stat. 9:16-1, &c., she has equal authority with the director of welfare to take an appeal. That argument is without substance, if for no other reason than that the original proceedings were not maintained under that act."

In State v. Schwartz, 67 Ohio App. 69, 70, 35 N. E. (2d) 860, 861, the mother of an illegitimate child demanded of the prosecuting attorney that he appeal from a sentence imposed upon the father of such child ordering him to support the child. The prosecuting attorney refused, and the mother in her own behalf and as next friend of the child appealed. In dismissing the appeal the Ohio court said:

"This was a criminal action in which the state of Ohio was the prosecuting party. Section 2916, General Code, imposes upon the

prosecuting attorney the duty to represent the state in such actions. Nowhere is a person interested in the results of such action, as was this child or its mother, given authority to intervene and take over any part of such prosecution. If this can be done in this case, where will the end be?"

In State ex rel. Borland v. Yates, 104 Or. 667, 670, 209 P. 231, 232, where the Oregon court held that the state had no right of appeal under the Oregon statute which provides that "the defendant shall be entitled to the right of trial by jury and appeal as provided in civil actions," the court said: "The right of appeal given by the statute is, by express terms, restricted to the defendant."

In State v. Wright, 39 Del. 552, 557, 3 A. (2d) 74, 77, the Delaware court, in holding that the state has no right of appeal under the Delaware statute, said:

"* * * The whole proceeding is of statutory origin—it had no existence at the common law, and the first statute in Delaware relating to the subject matter was passed in 1796. Being created by statute it is entirely regulated by that statute and if no right of appeal is there given such right is non-existent. The statute shows the only right of appeal in favor of 'any person, against whom an order of filiation shall be made.' Rev. Code 1935, § 3566. That of course is not the State."

In Nutt v. Arbitelli, 3 N. J. Misc. 1194, 131 A. 64, the court held that the overseer of the poor had the right to appeal under the New Jersey statute.

In Waterloo v. People, 170 Ill. 488, 492, 48 N. E. 1054, 1055, the court said:

"No provision is made in the Bastardy act for an appeal by the prosecuting witness from the judgment of a justice of the peace discharging a defendant, and however the rule might have been before the passage of the amendatory act of 1889,[17] since the

---

[17]The amendatory act (Laws 1889, p. 61) changed the right of the mother to enter into a settlement with the reputed father. Prior to that

passage of that act the State controls the cause of action to a certain extent."

In People ex rel. Board of Police v. Shulman, 8 App. Div. 514, 40 N. Y. S. 779, the mother attempted to appeal from an order denying her motion that the magistrate be required to return to the county court the proceedings had by them in the prosecution. In holding that the mother had no right to appeal, the court said (8 App. Div. 517, 40 N. Y. S. 781):

"* * * The father has no pecuniary claim on the mother nor the mother on the father in respect to a child born or likely to be born a bastard. Neither is a party to a proceeding instituted against the other, and neither has any right to conduct, control or prosecute a proceeding instituted against the other. In case a proceeding is instituted against the father and an adjudication is made against him, or if a proceeding is instituted against the mother and an adjudication is made against her, he or she may appeal from the adjudication made against him or her, as the case may be. (Code Crim. Proc. § 851 *et sec.*) But the mother can not appeal from any order or adjudication made in a proceeding against the father, nor can the father appeal from any adjudication or order made in a proceeding instituted against the mother."

It is true that under our statutes (§ 257.19) the proceeding may be commenced by the mother. It may also be true that she will benefit indirectly from the order of the court requiring the father to support the child, in that it will relieve her of the necessity of doing so. It is also true that under our statute (§ 257.18, subd. 1) the proceeding for determination of paternity may be commenced by the county board, or any member thereof, or the division of social welfare, or others designated by our statute. If it is so commenced, may the mother still appeal? If she may, from what determination? May the county board likewise appeal? Obviously, these questions must be answered in the negative. Kirchoff v. Board of Co. Commrs. 189 Minn. 226, 248 N. W. 817. If the

amendment she had the absolute right to settle the claim with the father, and the act changed that right so as to prevent a settlement for less than $400.

trial of the action against the father results in a verdict of not guilty, may the mother, as an individual, likewise appeal from that decision? It seems to me that the statute gives her no such right. How, then, can it be said that she has a right to appeal from the court's approval of a lump-sum settlement made by the director of social welfare under express authority granted to the director alone by our statute when she can neither make nor prevent such settlement in her individual capacity?

However sympathetic we may feel toward the mother of an illegitimate child, it seems to me that the whole question before us lies within the legislative field. The legislature could have given the mother the right to prosecute the action in her own name, to settle the liability of the father, or to appeal, or could have given her all such rights. The plain fact is that the legislature did not do so, but, on the contrary, carefully defined what rights the mother has, and it does not seem to me that we have any power to enlarge those rights.

Beigler v. Chamberlin, 138 Minn. 377, 165 N. W. 128, L. R. A. 1918B, 215, cited in a footnote in the opinion to which I dissent, did not involve the obligation to support illegitimate children. On the contrary, it involved the right of a mother to recover from a divorced husband support which she had paid for minor children. Of course, even under the common law, a father was obliged to support minor children who were born of lawful wedlock. The same is true under our statute. This is not true of illegitimate children. Under the common law, the father was under no obligation to support such, and we must find the obligation and the rights of the parties in the statutes themselves. Furthermore, the above case was decided November 23, 1917. L. 1917, c. 210, became effective January 1, 1918. Prior to that act, the mother could sue the father individually under the then existing statute. Subsequent to the effective date of the act, she had no such right. That alone would destroy the case as authority for the proposition that the mother has the right individually to sue the father. The same is true of many of our old cases. In applying them to our present

statutes, we must first determine what changes have been made in the statute since the decision was rendered.

If we refer to the Report of the Minnesota Child Welfare Commission of 1917, it is apparent that the very basis of its recommendations was that the responsibility for safeguarding the rights of the infant was to be placed somewhere else than with the mother, and that is more particularly true when we come to consider the question of determining or settling the liability of the father than anywhere else. In its report to the governor (p. 13), the commission explained its position thus:

"* * * Bill No. 1, * * * *gives the Board of Control a duty toward the child,* and the commencement of proceedings to establish paternity will no longer be contingent, as at present, *upon considerations other than the primary one of the child's well-being."* (Italics supplied.)

This is also evident from the purpose of the act as expressed by the legislature (L. 1917, c. 210, § 3225 [d]), set forth *supra.* It is significant that in none of these expressions of intent or purpose is the interest of the mother taken into account. It is my opinion that the mere fact that she has an indirect pecuniary interest is not enough to permit us to say that she may take over the prosecution, which has been vested in the state, and appeal or prosecute the action in her individual capacity. I think that the appeal should be dismissed.

MAGNEY, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Knutson.

MATSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Knutson.