## UNITED STATES v. L. P. SIEBOLD, INC.

**No. 5874.**—Invoice dated Shanghai, China, May 8, 1941.
Certified May 9, 1941.
Entered at Washington, D. C., June 19, 1941.
Entry No. W–370.

(Decided May 20, 1943)

*Paul P. Rao*, Assistant Attorney General (*Frank E. Carstarphen*, special attorney), for the plaintiff.

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the defendant.

EKWALL, Judge: This is a collector's appeal for reappraisement of an importation of chinaware and wood stands imported from China and entered at Washington, D. C. The merchandise was entered at the invoice prices, which were f. o. b. Kientehchen, China, plus packing and wooden cases, and it was appraised as entered. It is the Government's contention that the item of inland freight from Kientehchen to Shanghai is a part of the export value of the goods. This contention is based upon the allegation that the principal market is at Shanghai and not at Kientehchen. The appraiser returned this item of inland freight as nondutiable.

The issue as presented is, therefore, which of the two cities is the principal market. If, as claimed by the Government, Shanghai is the principal market then the inland freight from Kientehchen to that port is part of the export value. If the principal market is at Kientehchen the inland freight would not be a part of the dutiable value.

In support of its position the Government produced the report of a representative of the Treasury Department at Shanghai. This was admitted over objection on the part of the defendant on the ground that it was too far removed in time from the date of exportation of the merchandise in suit and was, therefore, immaterial, irrelevant and incompetent. Said report is dated November 13, 1940, and covered sales made in 1939 and 1940, whereas the instant merchandise was exported May 9, 1941. Government counsel also offered and there was received in evidence as exhibit 2 a certification of the Customs Information Exchange made subsequent to the date of exportation of the merchandise in suit, to the effect that reports cannot reasonably be expected to be received from foreign investigating officers in China, and that, therefore, requests for investigations are being cancelled. Exhibit 2 was offered as proof on the part of the Government that information which might have covered a later date could not be obtained.

While it is true that the report covered a period 6 months prior to the time the instant merchandise was exported, it is the opinion of the court that in view of all the circumstances it is proper to consider it here.

The special agent states that "The firm of Zing Hsiang Shing occupies a dominant position in the chinaware trade of Shanghai, probably 75% of the export goods passing through its hands  *  *  *." The report further states that this firm "has large financial resources, which it uses in part to advance money to makers, and in part to buy ready goods at all times, whereas other purchasers buy only when they have foreign orders. On account of these circumstances, the makers, mostly small family operators, look on Zing Hsiang Shing as their main support and market, and said firm can to a large extent command their output as it likes. For this reason other shippers frequently have to go to Zing Hsiang Shing for a portion of any quantity requirements, even if they have their own representatives in Kintechen."

The report referred to a series of investigations made in 1936, as to the principal market and states:

The situation at present seems to be much what it was at that time, in that part of the goods is bought from dealers' stocks in Shanghai, and part of it is obtained by dealers in Kintechen for exporters, pursuant to orders allowing considerable latitude. It is now even more positively true than before, owing to war conditions, that foreign buyers do not personally visit Kintechen to make purchases. * * *.

The financial status of the seller and shipper, which, according to the report, largely accounted for the place of the principal market, would have been less likely to change under war conditions than would that of the smaller dealers in Kientehchen.

It is the opinion of the court that the proof is sufficient to overcome the presumption of correctness attaching to the appraiser's finding of value; that the principal market for the chinaware and wood stands here involved, which is the only merhandise on which an appeal was filed, was at Shanghai, and that the item of freight from Kientehchen to Shanghai is a part of the export value of the merchandise as such value is defined in section 402 (d) of the Tariff Act of 1930.

I therefore find from the record that the chinaware and wood stands are properly dutiable on the basis of the export value which I find to be the *per se* invoiced and entered value in Shanghai dollars, plus cases and packing as invoiced and plus the item of inland freight from Kientehchen to Shanghai. Judgment will be rendered accordingly.