ROBERT REINER, INC. *v.* UNITED STATES

**No. 6240.**—Invoices dated Einsiedel, Germany, September 30, 1938, etc.
Entered at New York, N. Y., October 25, 1938, etc.
Entry No. 748801, etc.

(Decided December 7, 1945)

Benjamin A. Levett (*Benjamin A. Levett* and *Meyer Ohlbaum* of counsel) for the plaintiff.

Paul P. Rao, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the defendant.

LAWRENCE, Judge: These three appeals for reappraisement were consolidated for trial. The merchandise consists of hosiery machines described in the record as "footers" and "leggers." Each appeal relates to a single machine as follows:

| Reappraisement No. | Date of Exportation | Machine |
|---|---|---|
| 152292–A | Oct. 12, 1938 | 28-section, 42-gauge footer |
| 152293–A | Jan. 5, 1939 | 28-section, 45-gauge legger |
| 152294–A | Mar. 10, 1938 | 24-section, 45-gauge legger |

The machines were appraised upon the statutory basis of cost of production, whereas plaintiff claims they should have been appraised on the basis of United States value as represented by the entered values.

The parties have agreed that there is neither a foreign nor an export value for the merchandise, and it is conceded by the plaintiff that "if there be no United States value and the cost of production be taken that the appraiser's figures are correct." Plaintiff also concedes that in the calculation of United States value no allowance for profit should be made, since none was deducted on entry.

It is of the first importance, therefore, to ascertain whether the record establishes statutory United States value for the merchandise.

Prior to its amendment by the Customs Administrative Act of 1938, section 402 (e) of the Tariff Act of 1930 read:

UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any-has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

The importation covered by reappraisement No. 152294–A, was entered prior to the effective date of the Customs Administrative Act, *supra*, while the two remaining shipments were exported from abroad and entered after that date. The only change made by the amendment of section 402 (e), *supra*, was the insertion of the words "for domestic consumption" after the words "freely offered for sale."

A preliminary question is presented in connection with the offer in evidence by counsel for the plaintiff of a report, dated November 16, 1940, signed by Customs Agent Malcolm Gerry, which relates to an investigation made by said agent at the request of the Assistant Attorney General, of the books and records of the plaintiff "for evidence relating to the United States value of hosiery machines manufactured by Maschinfabrik, Einsiedel, Germany," the exporter of the machines at bar.

Objection to the admission of the report was made by the Government on the ground that it is incompetent, immaterial, and irrelevant, and decision as to its admissibility was reserved. I find that the report relates, among other things, to the plaintiff's general expenses and profit during the year 1938 and its method of doing business. The dates of exportation of two of the machines here involved were March 10 and October 12, 1938, respectively, and it would thus appear that the report was competent, material, and relevant. The motion for its admission is therefore granted, an exception to this ruling being allowed to the defendant, and the report will be marked exhibit 1.

In view of the conclusion I have reached in this case, the motion of the defendant to dismiss the appeals on the alleged ground that plaintiff has failed to establish United States value, is denied, and an exception allowed.

As above indicated, the imported merchandise consists of hosiery machines known as "footers" and "leggers," which manufacture the feet and legs, respectively, of hosiery. They cannot, however, be used interchangeably. The number of sections mentioned in describing the machines refers to the number of legs, or feet, a machine can make simultaneously, and the gauge denotes the fineness of the hosiery, the higher the gauge the finer the stocking.

The testimony of John Vollmann, the only witness who appeared herein, discloses that he is the office manager of the plaintiff corporation, which has a standing order with the German manufacturer under which there are shipped to the plaintiff monthly four or five machines identical with those involved herein; that other machines are purchased but not shipped immediately, being kept in warehouse in Germany until requisitioned; and that the relationship between the manufacturer and plaintiff is that of seller and buyer, payment in each instance being made before delivery of the machines.

The machines are sold by salesmen who canvass the hosiery manufacturing trade along the eastern seaboard of the United States. When an order is given for a particular sized machine which may not be in stock in this country or in Germany, the customer is first persuaded to accept a different sized machine before a request is made upon the factory for a machine of the correct size.

The machines are sold erected or in a knocked-down condition. If erected, an additional charge is made to cover installation and for attachments, driving mechanism, etc. Contracts between plaintiff and its customers specify no particular serially numbered machine, the plaintiff being free to deliver any machine of the type and size mentioned in the order.

The plaintiff contends that the United States value for each of the involved machines may be found (1) based upon the price at which

previously imported identical machines were sold and delivered at the time of exportation herein; or (2) based upon the price at which allegedly similar machines were said to have been available and freely offered for sale in this country at the time of exportation herein. I am satisfied that the evidence substantiates the first of these contentions, and that it is unnecessary to discuss the claim based upon the value of similar machines.

I quote from the testimony:

Q. In other words, they shipped 4 or 5 machines every month on a standing order, is that it?—A. That is right.

\* \* \* \* \* \* \*

Q. Of course, we are referring to the period of these importations.—A. That is correct.

\* \* \* \* \* \* \*

Q. Now, had you imported machines of that character previously that were identical?—A. Oh, yes.

Q. And as to all three of these machines did you, during the past years, previous to 1938 import those machines right along?—A. Yes, we did.

Q. Identical with those that were in question?—A. Yes.

Q. And sold them here?—A. That is correct.

Q. And was the price uniform?—A. Yes.

Q. Over the course of years for each type of machine?—A. Yes, sir.

Q. Now, were those prices, the prices at which you entered this merchandise, that is to say, was it the price, the gross price with the statutory deductions; is that the way you made entry of these?—A. Yes.

Q. Basing it on the machines of the same character exactly that you had previously entered, is that right?—A. That is correct.

Q. And sold in this country at those prices?—A. Yes.

\* \* \* \* \* \* \*

R. Q. During all this period was it a fact that you were continually offering these goods for sale, of all kinds, throughout the country?—A. Yes.

\* \* \* \* \* \* \*

X Q. I understood you to testify that those were the prices at which you sold previously imported merchandise, is that correct?—A. That is correct.

The witness then stated that he furnished the figures upon which the customs broker made entry herein and did the calculations which entered into the computation of United States value in each case, and that those figures and calculations appear on three sheets of yellow paper, one attached to the entry papers in each instance, and which form collective exhibit 4 herein. He testified specifically concerning the calculations on the yellow sheet attached to the papers in Reappraisement No. 152292–A covering entry 748801. He pointed out that it gave the basic price at which the particular machine there involved was sold in a knocked-down condition. From that price he deducted the cost of various attachments and the charges for erecting the machine, also 8 per centum for overhead, and the freight, insurance, and the duty. No deduction for profit was made because none

was claimed. The witness said his testimony would apply with equal force to the calculations appearing on the yellow sheets with the papers in the other two reappraisement appeals. The home office of the plaintiff at Weehawken, N. J., was given as the principal market for these machines in this country, and the usual wholesale quantity thereof as 3, 6, or 9 machines. In no case is any discount allowed for the number of machines purchased.

The reports of Customs Agent Edward J. Dougherty, dated February 1 and March 26, 1943, received in evidence as defendant's exhibits 2 and 3, respectively, as well as exhibit 1 hereinabove mentioned, do not contradict the evidence offered by the plaintiff, but, in fact, support it.

In the case of *United States* v. *G. W. Sheldon & Co.* (*Renaud & Co.*), 23 C. C. P. A. (Customs) 245, T. D. 48108, the method of ascertaining United States value under section 402 (e) of the Tariff Act of 1930 was set forth as follows:

The conclusion of the division as to the method of ascertainment of United States value must be the correct one, under the language of section 402 (e) of said tariff act. The said value is the price at which such or similar imported merchandise is *freely offered for sale*, packed, in the principal market of the United States, to all purchasers, *at the time of exportation* of the merchandise which is being valued. This could, of course, be established only by such or similar goods which had been previously imported and were being freely offered for sale at the time of export of the goods being valued. [Italics quoted.]

I regard the foregoing rule as requiring nothing more than that, at the time of exportation of the goods being valued, there shall be at least one importation of prototype or similar merchandise which is freely offered for sale or freely sold under conditions which reflect the value of the goods under consideration.

In the application of that rule to the facts in the present case, I do not believe it is essential that prototype merchandise be "available for offer" on the *date* of exportation of the instant merchandise. To so hold would require that the prototype merchandise be then unsold, otherwise it could not be available for offer. That construction would, in effect, restrict the application of United States value to goods ordinarily carried in stock. There is nothing in the language of the statute so limiting its scope. I must, therefore, conclude that such was not the intention of the lawmakers.

Although the provisions of the statute (section 402, *supra*) refer to imported merchandise "freely offered for sale," it has been held that that requirement is met by evidence showing an actual sale or sales made in harmony with a free offer. *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276. Here the evidence of actual sales is accompanied by proof that they were made under free offers.

As a matter of fact, it is interesting to note that the United States value formula is the only one of the four statutory value formulae which has been held to require that prototype merchandise must be *in esse* at the time of exportation of the goods being valued. This probably stems from the fact that the allowances and deductions to be made in ascertaining United States value of imported merchandise in a given case are the same allowances and deductions which were made in determining the United States value of previously imported prototype merchandise. *United States* v. *Carbic Color & Chemical Co.*, 47 Treas. Dec. 526, T. D. 40859; *United States* v. *Wetterwald & Pfister Co., Inc.*, 57 Treas. Dec. 455, T. D. 43927; *Old Masters Paper & Pulp Corp.* v. *United States*, 63 Treas. Dec. 962, T. D. 46425; and *The Stern Hat Co.* v. *United States*, 26 C. C. P. A. (Customs) 410, C. A. D. 48.

In discussing the application of the United States value formula to the facts in the case at bar, I am satisfied that the evidence with respect to prior sales of machines identical with those in issue establishes the United States selling price of the latter, even though prototype machines may not have been "available for offer" on the exact date of importation of the instant merchandise.

I am aware of the fact that in *United States* v. *Collin & Gissel* (*Ludwig Baer*), 29 C. C. P. A. (Customs) 96, C. A. D. 176, the court held that where the proof showed that there was—

* * * no prototype machine in the United States *at or near the date of exportation* of the involved machine available for offer, a fundamental element of United States value, as defined by the statute, was lacking. * * * [Italics supplied.]

But I am of the opinion that the foregoing statement must be viewed in the light of the facts in that case. It there appeared that there had been continuous offers and sales of identical merchandise prior to the date of exportation of the goods being valued, but that there had been a *price change* shortly before such date. Obviously, therefore, the price at which the machines were being freely offered and sold prior to such price change would be valueless as evidence of the price of the machines there under consideration. No merchandise which had been imported prior to the said date of exportation *had been freely offered for sale or sold at the new price.* As a matter of fact, the involved shipment was the first importation to arrive after the price change, and hence there was no prototype merchandise at the new price. It was, in effect, a first importation.

By contrast, in the case at bar the evidence is clear that the price for each type of machine was uniform over a period of years prior to the date of exportation. The situation presented is akin to that postulated by the Court of Customs and Patent Appeals in the case

of *United States* v. *New York Merchandise Co., Inc.*, 31 C. C.. P. A. (Customs) 213, C. A. D. 274, as follows:

The law upon the construction of section 402 (e), *supra*, is, we think, fairly well settled, and without quoting extensively from the foregoing cited cases, we think the following principles. applicable to United States value are definitely settled: First, the value of the imported merchandise to be arrived at must be based upon the price at which such or similar *previously imported* merchandise is freely offered for sale to all purchasers, packed ready for delivery, etc., at the time of exportation of the imported merchandise. *Second, the phrase "at the time of exportation" does not necessarily mean the hour or the day of exportation, but a time near enough to the date of exportation and under such circumstances as will reflect the price of the goods on the date of exportation. It is obvious that no definite period prior or subsequent to the exportation can be fixed as a standard for all cases. A fluctuating market, which might be brought about by many reasons, might make a date of sale or offer in this country prior or subsequent to the date of exportation an improper one to accept in determining the question here involved.. On the other hand, the proof might show a steady, unvarying market or other conditions which would make a date months removed from the date of exportation a proper one to reflect what the price was on the date of exportation.* [Italics in last four sentences supplied.]

I regard the language which I have emphasized as embodying a wholesome doctrine. As I interpret the views expressed by the court they reflect its purpose to liberalize rather than to restrict or narrow the scope of the United States value provision. In so doing the practical administration of the provision is promoted, and the application of United States value—a highly desirable alternative method of ascertaining a constructive foreign market value—is given an appropriate, legal, and practical construction. In according United States value in section 402 (e), *supra*, precedence over statutory cost of production in section 402 (f), *supra*, Congress doubtless recognized the greater facilities afforded for its ascertainment by administrative officials, and also that it was readily available through legal processes in this court. In the absence of foreign or export value, it would seem, therefore, to be a salutary means of appraising imported merchandise which should be jealously guarded and adopted wherever legally applicable.

On the established facts I find—

1. That at time of exportation of these machines there existed in Germany, the country of exportation, no foreign or export value therefor.

2. That said merchandise was freely offered for sale, packed ready for delivery in the principal market of the United States—which is Weehawken, N. J.—to all purchasers at the time of exportation of the imported merchandise, in the usual wholesale quantities—whether one or more—in the ordinary course of trade, with statutory allowances, at the price represented by the entered value in each case.

I therefore conclude as a matter of law that the merchandise before

me should be appraised on the basis of the United States value thereof, as provided in section 402 (e), *supra*, and that such value is represented by the entered value in each case.

Judgment will be entered accordingly.