(C. D. 1506)

Esso Standard Oil Company *v.* United States

## United States Customs Court, Third Division

(Decided March 5, 1953)

*Sharretts, Paley & Carter* (*Howard C. Carter* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Arthur R. Martoccia,* special attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: A cargo of fuel oil and gas enrichment fuel oil was imported from the Netherlands West Indies and entered at the port of Charleston, S. C., on March 12, 1951. Duty was assessed thereon at the rate of ½ cent per gallon under the provisions of section 3422 of the Internal Revenue Code (26 U. S. C. sec. 3422). Plaintiff filed protest against this assessment claiming the proper rate to be ¼ cent per gallon under the terms of the trade agreement with Venezuela (T. D. 50015) and the General Agreement on Tariffs and Trade (T. D. 51802). It is further claimed on behalf of the plaintiff that the liquidation was the result of a clerical error on the part of the Government officials, and, alternatively, that said liquidation was premature under the provisions of section 505 of the Tariff Act of 1930 (19 U. S. C. sec. 1505) for the reason, as alleged, that such liquidation occurred prior to the receipt by the collector of the reports enumerated in said section 505.

The amendment to said section 3422 reduced the rate of duty on merchandise such as that here involved, by virtue of the trade agreement with Venezuela, to ¼ cent per gallon and limited the application of that rate as follows:

*Provided,* That such petroleum and fuel oil entered, or withdrawn from warehouse, for consumption in any calendar year in excess of 5 per centum of the total quantity of crude petroleum processed in refineries in continental United States during the preceding calendar year, as ascertained by the Secretary of the Interior of the United States, shall not be entitled to a reduction in tax by virtue of this item, but the rate of import tax thereon shall not exceed ½ cent per gallon.

Thus, a quota or quantity of petroleum and fuel oil derived from petroleum was established. The President, by proclamation (T. D. 52641), having determined that treaty obligations of this country require that said quota be allocated to certain foreign countries in proportion to the total importations from such supplying countries, which allocation was requested by the Government of Venezuela, proclaimed a reduction in the rate of tax on these commodities when imported from the Kingdom of the Netherlands (including its overseas territories) during the year 1951 and declared that country's quota to amount to not more than 18.7 per centum of the total aggregate quan-

-tity imported therefrom. Following this allocation of 18.7 per centum to the Kingdom of the Netherlands (including its overseas territories), it was determined that importations of 822,654,271 gallons of said commodities were entitled to the ¼ cent per gallon rate and that importations in excess of that amount are subject to the rate of ½ cent per gallon (T. D. 52684).

On March 1, 1951, the Bureau of Customs informed collectors of customs that a deposit of ½ cent per gallon should be collected on dutiable importations of petroleum and fuel oil the produce or manufacture of the Kingdom of the Netherlands (including its overseas territories) entered on or after March 5, 1951. In accordance therewith, entry in the instant case, which was made on March 12, 1951, was accompanied by a deposit of duty at the rate of ½ cent per gallon. Thereafter, to wit, on August 16, 1951, the collector of customs at the port of Charleston was advised in a communication from the Bureau of Customs that the 1951 quota on petroleum and petroleum products allocated to the Kingdom of the Netherlands (including its overseas territories) was filled on March 16, 1951, and that entries or withdrawals of such merchandise during the period from January 1, 1951, through March 15, 1951, were dutiable at the rate of only ¼ cent per gallon.

The instant entry was liquidated on May 15, 1951, and duty assessed at the ½ cent per gallon rate.

On December 7, 1951, the importer herein requested the collector of customs at the port of Charleston to reliquidate and assess duty at the lower rate of ¼ cent per gallon. This request was denied on December 10, 1951, whereupon the importer filed timely protest.

At the trial, plaintiff introduced the testimony of two witnesses in support of its claim, Mr. William O. Brown, Jr., the entry officer at the port of Charleston, and Mr. Wittschen, the general marine officer in charge of liquidation at the office of the collector of customs at Charleston.

Mr. Brown testified that in the course of his duties as entry officer he received the letter from the Commissioner of Customs, dated March 1, 1951, referred to above, which was admitted in evidence as exhibit 1, and also the letter, dated August 16, 1951 (exhibit 2). This witness identified exhibit 3 as a letter, dated September 7, 1951, received by plaintiff's attorneys from the Bureau of Customs, which, among other things, states that collectors of customs understand that entries covering quota merchandise should not be liquidated at a time when the rate of duty which is to be used in liquidation is not known. This letter further stated that should an inadvertent liquidation take place, the safest course would be to file a timely protest. It was stated by this witness that he placed all three letters (exhibits 1, 2, and 3) in

the files and did not pass them along to the liquidator. That as it was customary for his office to receive sufficient numbers of copies of all letters from the Bureau of Customs to enable all in the office concerned to have a copy, he did not ask the liquidator whether he had seen the letter (exhibit 3). He was unable to state whether more than one copy of exhibit 1 was received; the only one he saw was the one he, himself, received.

Mr. Wittschen, who stated that he was general marine officer in charge of liquidation at the Charleston collector's office, testified that he had been liquidating customs entries about a year and a half at the time of the hearing. He liquidated the instant entry, but he admitted that at the time of said liquidation he had not determined the quota status of such merchandise. At that time, he stated that he had not received a copy of the letter, dated August 16, 1951, advising the collector that entries or withdrawals of this type of merchandise during the period from January 1, 1951, through March 15, 1951, were dutiable at the rate of ¼ cent per gallon, but that he subsequently received it. At the time of liquidation, he was under the impression that he had all the information necessary; that he thought the rate he used was the proper rate, but subsequently found out otherwise. At the time he liquidated, he thought he was applying the proper rate as he had received no information to the contrary. The witness stated that had he had exhibits 1 and 2 before him at that time, he would not have liquidated at the ½ cent per gallon rate, and that since receiving exhibit 2, he felt that the liquidation at the ½ cent per gallon rate was a mistake. At the time he took such action, he had not received the letter (exhibit 1) which stated that the quota status of this type of merchandise would be determined as soon as possible after receipt of complete reports from collectors and Comptrollers of Customs.

Under the circumstances above set forth, we must determine whether the rate of duty used in liquidation was the result of a clerical error. This court and our appellate court have on numerous occasions had before them the determination of the question of what constitutes clerical error. Perhaps the broadest view on this point was adopted by the Court of Customs and Patent Appeals in the case of *S. Yamada* v. *United States*, 26 C. C. P. A. (Customs) 89, T. D. 49628. There, the court had before it a case in which a customhouse broker, acting in a clerical capacity, in preparing and filing a duress entry certificate, used an old certificate which did not contain the correct number of the test case, although his intention was to file a new certificate given him by the customs attorney for the importer. The court held that such act, which was due to carelessness, inadvertence, and mistake, constituted a clerical error within the meaning of section 514 of the Tariff Act of 1930. In the course of its decision, the court stated:

* * * We think the purpose of the clerical error provision of section 514, *supra*, was to enable the collector to reliquidate and thus correct injustices which

would result from clerical errors and we see no reason advanced by anyone, and we know of none that can be advanced, that would warrant the conclusion that Congress did not intend the importer to have relief from clerical error, such as that here under consideration, when it is clearly shown to be a clerical error, and where the good faith required by the statute is affirmatively shown and unquestioned as it is here.

The court cited and quoted from the early case of *Morimura Bros.* v. *United States*, 160 Fed. 280, as follows:

Clerical error implies negligence or carelessness; but the question is: Whose is the negligence? If it is that of a "clerk, writer, or copyist," it is clerical error. Century Dictionary. The expression assumes that the mistake or negligence or carelessness is that of one engaged in the subordinate service of transcription, copying, or comparison; a labor not requiring original thought. It seems to me that the mistake in this case was clearly clerical, and, furthermore, that it is the sort of error correction of which is not harmful to the administration of the customs laws, and relief from which has been frequently granted by the board itself. * * *

The court held that the mistake there committed "was the error of one upon whom no duty devolved to exercise original thought or judgment in determining what pending cases were to be listed. It was not Blinn's [the customhouse broker] duty to select the correct pending case. This had been done for him by another whose instructions presumably he was required to follow, and he intended to do so."

In the case of *H. H. Elder & Co.* v. *United States*, 20 Cust. Ct. 61, C. D. 1084, we had before us a situation in which the liquidator failed to follow certificates of analyses made by the laboratory on importations consisting of seeds contrary to the usual practice of the collector's office. The evidence disclosed that the liquidator testified that he must have overlooked said certificates and that had he seen them he would have followed them. This court, in holding that this action of the liquidator constituted clerical error, used the following language:

In the instant case the liquidator, a subordinate of the collector, acting in a clerical capacity, upon whom no duty devolved to use original thought or judgment in determining the percentages of the different varieties of seed shown on the entry, testified that he did not follow the laboratory certificates because he overlooked them; that he would have followed them if he had seen them in the file. The record shows that the practice was to liquidate these seed entries in conformity with these certificates from the seed laboratory. There can be no question of bad faith on the part of a Government employee who had nothing to gain by his action in such a case as this. * * * Upon the record we find that a clerical error was committed in the liquidation of the entry here before us; that it was discovered within 1 year after the date of entry; that demand was duly made upon the collector for reliquidation of the entry on account of said clerical error; that said demand was refused, against which a valid protest was timely filed. * * *

Applying the reasoning of the above-cited cases to the facts of the instant case, we find that the error of the liquidator, a subordinate of the collector, acting in a clerical capacity, upon whom no duty devolved to exercise original thought or judgment in determining the

rate applicable to quota merchandise, or in determining which entries should be withheld from liquidation or what period of time should be allowed to elapse in order to obtain information as to the filling of the quota of such merchandise, constituted a "clerical error," discovered within 1 year after the date of entry and on account of which clerical error demand was duly made upon the collector for reliquidation of the entry. Protest against refusal to accede to said demand was timely filed. The protest is, therefore, sustained and the entry should be reliquidated and assessment had at the rate of ¼ cent per gallon under said section 3422, as amended.

In view of our conclusion, we find it unnecessary to discuss the claim that the liquidation was premature by reason of the provisions of section 505, *supra*.

Judgment will be rendered accordingly.